IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CHARLES P. COCHRAN, JR.,
an individual,

                    Plaintiff,

v.                                               CIVIL ACTION NO.   3:13-10176

WEST VIRGINIA REGIONAL JAIL AND
CORRECTIONAL FACILITY AUTHORITY,
an agency of the State of West Virginia and
CORRECTIONAL OFFICER NEAL,
individually and in his official capacity as a
correctional officer at Western Regional Jail,

                    Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending is the Motion for [Partial][1] Summary Judgment, ECF No. 53, of Defendant West Virginia Regional Jail and Correctional Facility Authority ("WVRJCFA"). For the reasons explained in detail below, this Motion is **GRANTED in part** and **HELD IN ABEYANCE in part**. Counts I, II, and V are hereby **DISMISSED** against the WVRJCFA. The WVRJCFA's motion for summary judgment regarding Plaintiff's negligent supervision claim under Count III is **HELD IN ABEYANCE** pending further argument by Plaintiff and the WVRJCFA at the Pretrial Conference already scheduled in this case. All of Plaintiff's other claims under Count III are hereby **DISMISSED** against the WVRJCFA. Given that the WVRJCFA failed to argue for the

---

[1] Despite including Plaintiff's premises liability claim (Count IV) in its list of the claims asserted against it at the beginning of its memorandum in support of the instant Motion, the WVRJCFA never argues any basis for the dismissal of this claim and never seeks summary judgment in its favor regarding this claim. *See* Mem. Supp. [Partial] Mot. Summ. Judg. at 2, ECF No. 54.

dismissal of Plaintiff's premises liability claim (Count IV), this claim remains active against the WVRJCFA.

The Court **DIRECTS** Plaintiff and the WVRJCFA to prepare to provide at the upcoming Pretrial Conference 1) specific legal arguments regarding whether and/or *precisely how* the WVRJCFA's supervision of its employees was either a) in violation of a clearly established statutory or constitutional right or a law of which a reasonable person would have known or b) otherwise fraudulent, malicious, or oppressive, and 2) clarification of the evidence in the record in support of those arguments. For Plaintiff to prove that qualified immunity does not apply to this negligent supervision claim, the specific law(s) and/or right(s) which Plaintiff alleges have been violated *by the unnamed public official and/or employee(s) conducting such supervision* must be named, and the evidence in the record must be applied to the law(s) and/or right(s) to show such violation. Additionally, the conduct must be within the scope of the public official and/or employee(s)' duties, authority, and/or employment.

## I. Background

Plaintiff brought the instant action in this Court on May 3, 2013, against the WVRJCFA, Correctional Officer Neal—both in his individual and in his official capacity—, and Does 1 through 25. Compl., ECF No. 1. All Doe Defendants were dismissed through this Court's February 6, 2014, Order. ECF No. 50. In his Complaint, Plaintiff alleges that, around midnight on May 6, 2012, C.O. Neal, an employee of the WVRJCFA at Western Regional Jail, entered Plaintiff's cell and repeatedly elbowed him on his left side until Plaintiff blacked out. Compl. ¶¶ 3, 10, 12. Plaintiff further alleges that he awoke coughing up blood, was taken to a nurse at the jail, and ultimately was transferred to an outside hospital, where he was diagnosed with a ruptured spleen

and a splenectomy was performed. *See id.* ¶¶ 14-16, 18, 26. Plaintiff alleges that he had no pod-mate that night and that the only witnesses were two other unnamed correctional officers. *Id.* ¶¶ 11, 13. Based upon these factual allegations, Plaintiff asserts claims against C.O. Neal and the WVRJCFA under outrage and reckless infliction of emotional distress, battery, negligence, and 42 U.S.C. § 1983. *Id.* at 7-9, 12. Additionally, Plaintiff asserts a premises liability claim against the WVRJCFA. *Id.* at 11. Plaintiff requests general and special damages, including consequential damages, punitive damages, pre- and post-judgment interest, and attorneys' fees and costs. *Id.* at 14.

After the close of discovery, the WVRJCFA filed the instant Motion for [Partial] Summary Judgment. Plaintiff timely filed his Response, ECF No. 62, and the WVRJCFA timely filed its Reply, ECF No. 63. This Motion is now ripe for resolution.

## II. Standard for Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A court reviewing a motion for summary judgment is not to weigh the evidence, to count how many affidavits favor the plaintiff and how many oppose him, or to disregard stories that seem hard to believe." *Littleton v. Swonger*, 502 F. App'x 271, 273 (4th Cir. 2012) (internal quotation marks omitted). "[S]uch credibility determinations are within the province of the jury." *Williams v. Collier*, 357 F. App'x 532, 534 (4th Cir. 2009) (citing *Anderson*, 477 U.S. at 255). Instead, the

Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Summary judgment is appropriate, however, when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his position; he "may not rest upon the mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 252; *Manning v. U.S. Dep't of Justice*, 104 F. App'x 907, 908-09 (4th Cir. 2004). Rather, he must present evidence supporting his position by citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials [in the record]." Fed. R. Civ. P. 56(c)(1)(A); *see also Manning*, 104 F. App'x at 909. "[T]he issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49.

Summary judgment is also appropriate when the inquiry involves a pure question of law. *Taft v. Vines*, 70 F.3d 304, 316 (4th Cir. 1995), *vacated en banc on different grounds*, 83 F.3d 681 (4th Cir. 1996).

### III.    Analysis

**A.    Sufficiency of the Evidence of C.O. Neal's Presence at the Jail at the Time Alleged**

First, the WVRJCFA argues that all claims against it must be dismissed because Plaintiff has "failed to prove the physical abuse alleged." Mem. Supp. [Partial] Mot. Summ. Judg. at 4. In particular, the WVRJCFA states that substantial evidence is in the record showing C.O. Neal's absence from the jail during the night when the alleged assault occurred and that Plaintiff presents no counter-evidence other than his own "self-serving testimony." *Id.*; Reply at 3. The WVRJCFA also explicitly adopts the factual assertions and arguments made in C.O. Neal's Motion for Summary Judgment, ECF No. 55. Mem. Supp. [Partial] Mot. Summ. Judg. at 4. As with C.O. Neal's Motion, Plaintiff responds with evidence—in the form of Plaintiff's answer to an interrogatory and a portion from a report of Plaintiff's expert recounting the battery as told to him by Plaintiff—that a genuine issue of material fact exists on this point. *See* ECF Nos. 62-1, 62-2.

To the extent that the WVRJCFA adopts or repeats C.O. Neal's arguments, the Court hereby incorporates into this Memorandum Opinion and Order its June 10, 2014, Memorandum Opinion and Order, ECF No. 64, denying C.O. Neal's Motion for Summary Judgment. As explained by this Court in that prior Memorandum Opinion and Order, the evidence presented by both sides pits the Plaintiff's word against the word of others. Credibility determinations, as required here in order to resolve these conflicting accounts, are to be made by the jury, not this Court. Thus, drawing all reasonable inferences in favor of Plaintiff, the Court finds that a genuine

issue of material fact exists as to whether Defendant Neal was present at the jail and committed the alleged battery on Plaintiff at the time in question. Therefore, summary judgment on this basis is inappropriate.

**B.      Section 1983 (Count V)**

The WVRJCFA also argues that Count V, under 42 U.S.C. § 1983, cannot be maintained against the WVRJCFA since, as a state agency, it does not qualify as a "person" under § 1983.

Section 1983 allows for the assertion of a claim against any "person" who, acting under color of state law, "depriv[ed] [another person] of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. The Supreme Court has held that a "person" suable for damages under § 1983 does not include a state agency or a state official sued in his official capacity.[2] *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). This case falls squarely within the category of attempted § 1983 actions which cannot be brought under the statute. The WVRJCFA is a state agency, so no § 1983 action can be brought against it. *See Cantley v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 728 F. Supp. 2d 803, 818 (S.D. W. Va. 2010) ("It is well established that the [WVRJCFA] is an agency of the State of West Virginia and is not a 'person' within the meaning of § 1983 for purposes of an action seeking money damages.").

Plaintiff argues that the U.S. District Court for the Northern District of West Virginia, in *Pethtel v. West Virginia State Police*, "tacitly recognized" the ability to recover from a state agency in a § 1983 action. 568 F. Supp. 2d 658, 672 (N.D. W. Va. 2008) ("To establish a [§ 1983] claim against the West Virginia State Police, the plaintiff must prove that the officers were executing a

---

[2] On the other hand, a state official may be sued for damages in his individual capacity even when the claim arises out of his official responsibilities, or he may be sued in his official capacity if the suit seeks prospective relief. *Hafer v. Melo*, 502 U.S. 21, 27 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). Neither is the case for the purpose of this Motion for [Partial] Summary Judgment.

custom or policy of the West Virginia State Police when the alleged constitutional violation occurred."); Resp. at 11. Plaintiff additionally argues that he can raise genuine issues of material fact as to both his Eighth Amendment and his Fourth Amendment "claims"[3] and that the WVRJCFA, like all West Virginia state agencies, has waived its immunity under the Eleventh Amendment; thus, his claims under § 1983 should survive. Resp. at 5-8, 10-12.

The Court does not find in *Pethtel* the support that Plaintiff seeks. The *Pethtel* court never directly addresses the issue squarely raised here by the WVRJCFA, and the support cited by that court for the "custom or policy" wording above is a case where the defendants were *local* governing bodies, against which—unlike here—a § 1983 suit may properly be brought. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978) ("Congress . . . intend[ed] municipalities and other local government units to be included among those persons to whom § 1983 applies. Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief . . . ." (footnotes omitted)). Additionally, in 2008, the Fourth Circuit recognized that "[i]t is . . . well settled that a state cannot be sued under § 1983" and that "[t]his rule applies to States or governmental entities that are considered arms of the State for Eleventh Amendment purposes." *Kelly v. Maryland*, 267 F. App'x 209, 210 (4th Cir. 2008) (internal quotation marks omitted). The WVRJCFA is an arm of the State of West Virginia. *Chafin v. W. Reg'l Jail*, No. 3:13-CV-01706, 2013 WL 3716673, at *4 (S.D. W. Va. July 12, 2013).

---

[3] Though the Eighth Amendment is specifically referenced under Count V—the § 1983 count—, the Court can find no reference to the Fourth Amendment or any other wording resembling a claim under that Amendment anywhere in the entire Complaint. Thus, briefing on this Motion notwithstanding, no claim under the Fourth Amendment has been made in this case.

Plaintiff's other arguments simply cannot overcome this fact.[4] Thus, Count V must be dismissed against the WVRJCFA.

### C. Qualified Immunity and Vicarious Liability (Counts II and III)

The WVRJCFA argues that it is entitled to qualified immunity from all of the negligence claims asserted against it and that it cannot be held vicariously liable for C.O. Neal's allegedly criminal acts. As recently explained by the West Virginia Supreme Court of Appeals in *West Virginia Regional Jail and Correctional Facility Authority v. A.B.*, qualified immunity and vicarious liability are intertwined with each other in the context of state agency liability:

> [W]e reject a blind application of common-law master-servant principles which fail to accommodate the policy interests at play with respect to the immunity of the State and its agencies, [but] we do agree that the issue of whether the public official or employee's actions are within the scope of his duties, authority, or employment has long been a relevant inquiry in our immunity law.
> . . .
> [G]overnmental entities can act only through their officers, agents, and employees.

No. 13–0037, 2014 WL 1272850, at section III(A)(3) & (4) (Mar. 27, 2014). The Court will thus analyze these qualified immunity and vicarious liability arguments together.

The decision-tree-type analysis that this Court must conduct when analyzing these arguments is outlined as follows in *A.B.*:

> [1] To determine whether the State, its agencies, officials, and/or employees are entitled to immunity, a reviewing court must first identify the nature of the governmental acts or omissions which give rise to the suit for purposes of determining whether such acts or omissions constitute legislative, judicial,

---

[4] Plaintiff's argument that a state's waiver of Eleventh Amendment immunity means that a § 1983 action can be maintained against that state reveals a misunderstanding regarding the relationship between § 1983 and the Eleventh Amendment. As explained by the U.S. Supreme Court in *Hafer v. Melo*, each concept is distinct; the Eleventh Amendment was only discussed in *Will* for the purpose of conducting statutory analysis of the word "person" in § 1983. *See Hafer*, 502 U.S. at 30. Upon the completion of that analysis in *Will*, the Court determined that "person" as used in § 1983 does not include a state agency; thus, a § 1983 claim can *never* be brought against state agency, regardless of whether an immunity gained from some other source of law is waived or not. The statute simply does not authorize such a suit.

-8-

> executive or administrative policy-making acts or otherwise involve discretionary governmental functions.
>
> . . .
>
> To the extent that the cause of action arises from judicial, legislative, executive or administrative policy-making acts or omissions, both the State and the official involved are absolutely immune . . . .
>
> However, to the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, [2] a reviewing court must further determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive . . . . In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability. If the plaintiff identifies a clearly established right or law which has been violated by the acts or omissions of the State, its agencies, officials, or employees, or can otherwise identify fraudulent, malicious, or oppressive acts committed by such official or employee, [3] the court must then determine whether such acts or omissions were within the scope of the public official or employee's duties, authority, and/or employment.
>
> To the extent that such official or employee is determined to have been acting outside of the scope of his duties, authority, and/or employment, the State and/or its agencies are immune from liability, but the public employee or official is not entitled to immunity . . . . If the public official or employee was acting within the scope of his duties, authority, and/or employment, the State and/or its agencies may be held liable for such acts or omissions under the doctrine of *respondeat superior,* along with the public official or employee.

*Id.* at section III(A)(4).

In Count II, Plaintiff alleges battery by C.O. Neal "in the scope of his employment" with the WVRJCFA. Compl. ¶¶ 39-40. C.O. Neal's "general functions as a correctional officer, like most law enforcement officers, are *broadly* characterized as discretionary, requiring the use of his discretionary judgments and decisions." *A.B.*, 2014 WL 1272850, at section III(A)(5). However, the battery as alleged is both malicious and in violation of a law of which a reasonable person would have known. The key issue, then, is whether C.O. Neal's alleged battery of Plaintiff occurred within the scope of his duties, authority, and/or employment. The facts of *A.B.* are

informative on this issue. In *A.B.*, the defendant correctional officer was accused of raping the plaintiff inmate multiple times while he was on duty. *Id.* at section I. Despite the fact that the correctional officer's job gave him the opportunity to commit the rapes, the court held that the rapes were "in no way an 'ordinary and natural incident' of the duties with which he was charged by the WVRJCFA . . . [thus,] the WVRJCFA [wa]s entitled to immunity for respondent's claims based on vicarious liability for [the correctional officer's] acts." *Id.* at section III(A)(5). Here, as in *A.B.*, C.O. Neal's alleged battery of Plaintiff was clearly not an ordinary and natural incident of his employment duties. Thus, since any liability of the WVRJCFA under Count II is wholly based upon C.O. Neal's alleged battery of Plaintiff, the WVRJCFA is entitled to qualified immunity from this Count. Count II, therefore, must be dismissed against the WVRJCFA.

In Count III, Plaintiff alleges negligence by the WVRJCFA for 1) failure to properly supervise its employees, 2) failure to properly train its employees and retrain incompetent ones, 3) failure to hire competent and professional correctional officers, 4) failure to retain competent employees, 5) failure of its employees to take steps to provide a safe environment for inmates, 6) failure to follow internal safety protocols, and 7) failure to heed applicable federal and state regulations and industry standards.[5]

First, it is important to note that all of these allegations "derive[] from the alleged negligence of some public officer(s) or employee(s) responsible" for ensuring that the applicable supervision, training, hiring, and retention were properly completed; that internal safety protocols and federal and state regulations and industry standards were followed; and that a safe

---

[5] Plaintiff separately alleges failure to ensure that *employees* heed applicable federal and state safety regulations and industry standards, but given that governmental agencies can act only through their officers, agents, and employees, this separate allegation is subsumed by the allegation of negligence through failing to heed applicable federal and state regulations and industry standards.

environment was provided for inmates. *See id.* at section III(B) ("[T]his claim . . . is based on vicarious liability despite the absence of specifically named 'bad actor(s)' who allegedly negligently supervised, trained, and retained [the co-defendant correctional officer]. This claim does not present a scenario where some general duty was statutorily or otherwise imposed upon the State or where the negligence alleged in the complaint cannot be traced to a particular individual(s). The training, supervision, and retention of [the correctional officer] unquestionably fell to some public officer(s) or employee(s), from whose alleged negligence respondent's claim derives." (citation omitted) (footnote omitted)).

The West Virginia Supreme Court of Appeals clarified in *A.B.* that for *negligence* claims asserted against the state, in particular, the following modification to the first step of the state agency qualified immunity / vicarious liability decision tree is made:

> In the absence of an insurance contract waiving the defense, the *doctrine of qualified or official immunity bars a claim of mere negligence against a State agency* not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29–12A–1, *et seq.,* and against an officer of that department acting within the scope of his or her employment, *with respect to the discretionary judgments, decisions, and actions of the officer.*

*See id.* (internal quotation marks omitted). Importantly, this modified first step remains only the first step out of up to three steps, such that even if the judgments, decisions, and actions which give rise to the claims are deemed to have been discretionary in nature, the Court must next determine whether Plaintiff has demonstrated that such judgments, decisions, and actions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive, and if so, whether such judgments, decisions, and actions were within the scope of the employee's duties, authority, and/or employment. *See id.*

The WVRJCFA provides as an exhibit its Certificate of Liability Insurance for the period during which the battery is alleged to have occurred. *See* ECF No. 53-1 at 14. In all capital letters, just before the signature portion of the form, the Certificate states, "It is a condition precedent of coverage under the policies that the [WVRJCFA] does not waive any statutory or common law immunity conferred upon it." *Id.* Plaintiff does not allege that the WVRJCFA is a party to any other insurance contract which waives the qualified immunity defense.

Additionally, the WVRJCFA is a state agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act. *See Lavender v. W. Va. Reg'l Jail & Corr. Facility Auth.*, No. CIV. A. 3:06-1032, 2008 WL 313957, at *8-9 (S.D. W. Va. Feb. 4, 2008). The stated purpose of the Act is "to limit liability of *political subdivisions* and provide immunity to *political subdivisions* . . . ." W. Va. Code § 29-12A-1 (emphasis added). In its definitions sections, the Act clarifies, "'State' means the state of West Virginia, including, but not limited to . . . all elected state officers, and all departments, boards, offices, commissions, agencies . . . institutions, and other instrumentalities of the state of West Virginia. *'State' does not include political subdivisions*." W. Va. Code § 29-12A-3 (emphasis added).

Supervision, training, hiring, and retention of employees, as broadly alleged by Plaintiff, all qualify as discretionary duties. *See A.B.*, 2014 WL 1272850, at section III(B). Given the ambiguity prior to *A.B.* regarding the exact qualified immunity analysis to be completed for negligence claims against a state agency, it is unsurprising that Plaintiff neglects to clarify in his Response precisely *how* the WVRJCFA's employees completed their supervision, training, hiring, and retention duties in a manner which was 1) in violation of a clearly established statutory or

-12-

constitutional right or a law of which a reasonable person would have known[6] or 2) otherwise fraudulent, malicious, or oppressive. Importantly, Plaintiff provides very little evidence regarding the training, hiring, and retention of the WVRJCFA's employees, such that, even if these claims were not barred by qualified immunity, no reasonable jury could return a verdict for Plaintiff finding negligence by the WVRJCFA in its completion of these duties. Thus, regardless of whether qualified immunity applies to Plaintiff's negligent training, hiring, and retention claims, they must be dismissed for insufficient evidence under the instant Motion for [Partial] Summary Judgment.

Plaintiff does, however, provide evidence in support of his negligent supervision claim, in the form of the expert report of Howard H. Painter. *See* ECF No. 62-1. Thus, the Court directs Plaintiff and the WVRJCFA to prepare to provide at the upcoming Pretrial Conference 1) specific legal arguments regarding whether and/or *precisely how* the WVRJCFA's supervision of its employees was either a) in violation of a clearly established statutory or constitutional right or a law of which a reasonable person would have known or b) otherwise fraudulent, malicious, or oppressive, and 2) clarification of the evidence in the record in support of those arguments. For Plaintiff to prove that qualified immunity does not apply to this negligent supervision claim, the specific law(s) and/or right(s) which Plaintiff alleges have been violated *by the unnamed public official and/or employee(s) conducting such supervision* must be named, and the evidence in the record must be applied to the law(s) and/or right(s) to show such violation. Additionally, the

---

[6] In his Complaint, under Count III, Plaintiff generically alleges that the WVRJCFA failed to follow internal safety protocols and applicable federal and state safety regulations and industry standards. The expert report Plaintiff provides as an exhibit to his Response lists two specific WVRJCFA policies and procedures—and the WVRJCFA's mission statement—which were allegedly violated by the WVRJCFA in its supervision, training, hiring, and/or retention of employees. *See* ECF No. 62-1 at 8-10. However, these policies and procedures do not qualify as "clearly established *statutory or constitutional rights* or *laws* of which a reasonable person would have known."

conduct must be within the scope of the public official and/or employee(s)' duties, authority, and/or employment.

Following internal safety protocols and heeding applicable federal and state regulations qualify as non-discretionary or ministerial aspects of a state employee's position. *See A.B.*, 2014 WL 1272850, at section III(B) ("[P]articular laws, rights, statutes, or regulations . . . impose ministerial [or non-discretionary] duties on the official charged with these functions."). Thus, the WVRJCFA is not immune for any negligence through failure to follow internal safety protocols or failure to heed applicable federal and state regulations. *See id.* at n.16 ("'[M]inisterial' duties . . . have been historically exempted from the realm of governmental functions for which the State, its officials, and employees are entitled to immunity.").

In contrast, deciding which steps to take to provide a safe environment for inmates and failure to heed industry standards, at the high-level alleged by Plaintiff, appear to this Court to qualify as administrative policy-making acts or omissions, for which both the state agency and the official involved are absolutely immune. Thus, the WVRJCFA is immune from liability for any alleged failure to take steps to provide a safe environment for inmates and to heed industry standards, and these claims must be dismissed.

Plaintiff argues that the State of West Virginia has waived its immunity to the extent that a plaintiff seeks only insurance proceeds and that Plaintiff—through a Notice of Claim submitted to the WVRJCFA shortly after Plaintiff commenced this suit[7]—has limited the recovery he seeks to less than the upper limit of any applicable liability insurance coverage. In support of the contention that the WVRJCFA has "waived" all immunity, Plaintiff cites *Pittsburgh Elevator Company v.*

---

[7] *See* ECF No. 62-5 ("The relief desired is monetary damages up to the amount of the State's insurance."). No such language appears anywhere in the Complaint, which seeks general and special damages, including consequential damages, punitive damages, pre- and post-judgment interest, and attorneys' fees and costs. *See* Compl. at 14.

-14-

*West Virginia Board of Regents*, which states, "Suits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the State's liability insurance coverage, fall outside the traditional constitutional bar to suits against the State [embodied in § 35 of Article VI of the West Virginia Constitution]." 310 S.E.2d 675, syl. pt. 2 (W. Va. 1983); *see* W. Va. Const. art. VI, § 35 ("The state of West Virginia shall never be made defendant in any court of law or equity . . . .").

Importantly, "Article VI, § 35 of the State Constitution grants *sovereign* immunity to the State . . . ." *Parkulo v. W. Va. Bd. of Prob. & Parole*, 483 S.E.2d 507, 514 (W. Va. 1996) (emphasis added). The WVRJCFA is immune to the claims dismissed above pursuant to *qualified* immunity. These two types of immunity are distinct. *See J.H. v. W. Va. Div. of Rehab. Servs.*, 680 S.E.2d 392, 398-402 (W. Va. 2009). Further, the West Virginia Supreme Court of Appeals, in *Parkulo v. West Virginia Board of Probation and Parole*, clarified that "*pleadings* [in actions which allege that recovery is sought under and up to the limits of the State's liability insurance coverage] *should state that qualification*, limiting the relief sought to the coverage actually provided by the applicable insurance policies." 483 S.E.2d at 515. The Complaint is completely devoid of any state liability insurance coverage limitation.

Thus, Plaintiff's claims against the WVRJCFA for battery and negligence through 1) failure to properly train its employees and retrain incompetent ones, 2) failure to hire competent and professional correctional officers, 3) failure to retain competent employees, 4) failure of its employees to take steps to provide a safe environment for inmates, and 5) failure to heed applicable federal and state regulations are dismissed pursuant to the WVRJCFA's qualified immunity from these claims.

-15-

### D. Sufficiency of the Evidence Regarding the Remainder of the Negligence Claims (Count III)

The WVRJCFA argues that Plaintiff's negligence claims must be dismissed for insufficient evidence. The only remaining negligence claims against the WVRJCFA are failure to follow internal safety protocols and failure to heed applicable federal and state regulations. Plaintiff fails to specify in his Complaint or in his Response any federal or state regulations which the WVRJCFA is alleged to have violated. Thus, this claim must fail.

Regarding the WVRJCFA's alleged failure to follow internal safety protocols, though Plaintiff's Response does not parse one negligence claim from the other, he does quote from his own expert's report that some officers violated WVRJCFA policies and procedures, among other violations. *See* Resp. at 7. The report specifically states that WVRJCFA employees violated two specific internal procedures in the following ways:

> Cpl. R. Ball did not submit a written Incident Report to his supervisor on 7 May 2012 when he was notified by LPN Amanda Shaw that [Plaintiff] was in emergency surgery with injuries possibly due to acute trauma, in violation of Policy & Procedure No. 3010, Procedure 14 . . . . Mr. Clark did not notify the Chief of Operations of allegations of [Plaintiff's] injuries being the result of staff abuse, in violation of Policy & Procedure No. 3036 . . . .

ECF No. 62-1 at 10.

It is the plaintiff's burden to prove the four elements of common-law negligence: 1) that the defendant owed a duty of care to the plaintiff, 2) that the duty was breached by some act or omission, and 3) that the act or omission proximately caused 4) some injury to the plaintiff that is compensable by damages. *Hersh v. E-T Enters., Ltd. P'ship*, 752 S.E.2d 336, 341 (W. Va. 2013). Even assuming that the WVRJCFA owed a duty of care to Plaintiff to follow its own internal procedures, including the two specific procedures alleged to have been violated, the timing of

these alleged violations, *after* Plaintiff sustained injuries, indicates that Plaintiff cannot prove that the failure of WVRJCFA employees to follow these internal procedures proximately caused his injuries.[8] Thus, the remaining negligence claims against the WVRJCFA must be dismissed.

### E. Sufficiency of the Evidence Regarding Outrage/Reckless Infliction of Emotional Distress (Count I)

The WVRJCFA argues that Count I, alleging outrage and reckless infliction of emotional distress, must be dismissed because Plaintiff has failed to produce sufficient evidence in support of this Count. Plaintiff responds that a genuine issue of material fact exists regarding this Count based upon Plaintiff's evidence that two correctional officers employed by the WVRJCFA beat him.

In Count I, Plaintiff alleges outrage and reckless infliction of emotional distress in "the acts leading up to, resulting in and following the beating of Plaintiff" by C.O. Neal. Compl. ¶ 33. Other than the alleged battery—for which, as explained above, the WVRJCFA cannot be held vicariously liable[9]—, the Complaint alleges that, 1) before the battery, C.O. Neal assigned Plaintiff the "worst jobs" at the jail and referred to Plaintiff in derogatory terms, including calling him "bitch"; 2) during the battery, two correctional officers watched; 3) after the battery, Plaintiff was "taken," presumably by employees of the jail, to a nurse working at the jail, who examined him and ordered that he be taken to a hospital; and 4) for the entirety of Plaintiff's hospitalization, correctional officers were present in the room with him. *Id.* ¶¶ 9, 15-17.

---

[8] The damages requested by Plaintiff in the negligence count are very specifically linked to the alleged beating by C.O. Neal: "past and future medical expenses, past and future lost wages, physical pain, removal of an organ, physical disability, mental pain, anguish and suffering, loss of service, protection, care and assistance, and quality of life." Compl. ¶ 47.

[9] Plaintiff's exhibits state that C.O. Berlin—not a party to this action—also assisted in the battery. *See* ECF Nos. 62-1, 62-2. The qualified immunity and vicarious liability analysis of this other correctional officer's alleged actions as a direct perpetrator of the battery is the same as that for C.O. Neal; thus, this additional alleged fact does not alter the outcome.

Plaintiff provides insufficient factual support for the first allegation—the alleged pre-battery treatment by C.O. Neal. One of Plaintiff's exhibits, his answers to interrogatories, states merely that C.O. Neal "from day one was rude and . . . harassed and threatened [Plaintiff]." ECF No. 62-2 at 2. Such nonspecific allegations are insufficient to provide evidentiary support for this claim. Plaintiff's exhibits do provide support, however, for the allegation that one of the three correctional officers who entered his cell that night "stood at the door." *See* ECF Nos. 62-1 at 5, 62-2 at 1. One exhibit also supports the third allegation in that a nurse was brought to Plaintiff; she examined him; and medical staff at the jail ultimately called for an ambulance to transport Plaintiff to an outside hospital. *See* ECF No. 62-1 at 5. The same exhibit also provides partial support for the allegation that correctional officers were present in the room with Plaintiff while he was at the hospital. *See id.* at 6.

In West Virginia, outrage and reckless infliction of emotional distress are, together, one legal theory: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *See Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, syl. pt. 2, 424 (W. Va. 1998) (internal quotation marks omitted).

> In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and[] (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Id.* at syl. pt. 3. "This claim does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Love v. Georgia-Pac. Corp.*, 550 S.E.2d 51, 61 (W. Va. 2001).

Even assuming that the actions of all WVRJCFA employees involved in these allegations were discretionary, were in violation of clearly established law or otherwise fraudulent, malicious, or oppressive, and fell within the scope of the public official or employee's duties, authority, and/or employment, no reasonable jury could find that the non-battery conduct for which Plaintiff presents evidence was so atrocious, intolerable, and extreme and outrageous as to exceed the bounds of decency. The second allegation alleges inaction when viewing another person's extreme and outrageous conduct; the third encompasses no poor conduct whatsoever; and the fourth encompasses conduct which is not plainly wrong and is, instead, quite common given the circumstances. Thus, Plaintiff has failed to make a showing sufficient to establish an essential element of outrage and reckless infliction of emotional distress—that the alleged conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency—against the WVRJCFA, and Count I must be dismissed against the agency.

### IV. Conclusion

As explained above, the WVRJCFA's Motion for [Partial] Summary Judgment, ECF No. 53, is **GRANTED in part** and **HELD IN ABEYANCE in part**. Counts I, II, and V are hereby **DISMISSED** against the WVRJCFA. The WVRJCFA's motion for summary judgment regarding Plaintiff's negligent supervision claim under Count III is **HELD IN ABEYANCE** pending further argument by Plaintiff and the WVRJCFA at the Pretrial Conference already scheduled in this case. All of Plaintiff's other claims under Count III are hereby **DISMISSED** against the WVRJCFA.

Given that the WVRJCFA failed to argue for the dismissal of Plaintiff's premises liability claim (Count IV), this claim remains active against the WVRJCFA.

The Court **DIRECTS** Plaintiff and the WVRJCFA to prepare to provide at the upcoming Pretrial Conference 1) specific legal arguments regarding whether and/or *precisely how* the WVRJCFA's supervision of its employees was either a) in violation of a clearly established statutory or constitutional right or a law of which a reasonable person would have known or b) otherwise fraudulent, malicious, or oppressive, and 2) clarification of the evidence in the record in support of those arguments. For Plaintiff to prove that qualified immunity does not apply to this negligent supervision claim, the specific law(s) and/or right(s) which Plaintiff alleges have been violated *by the unnamed public official and/or employee(s) conducting such supervision* must be named, and the evidence in the record must be applied to the law(s) and/or right(s) to show such violation. Additionally, the conduct must be within the scope of the public official and/or employee(s)' duties, authority, and/or employment.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

        ENTER:      July 2, 2014

        _____
        ROBERT C. CHAMBERS, CHIEF JUDGE